May it please the Court, Tom Sondag on behalf of the appellant Wal-Mart Stores. This case presents a single issue, which is whether, in awarding attorney fees, the district court erred by failing to account for the limited success achieved by plaintiffs' attorneys. Counsel, is it purely an Oregon law question? And is Oregon law identical to federal law in this respect? It is an issue to be decided under Oregon law. And in our view, Oregon law is identical to the federal law in this circumstance. The same factors that are applied in determining a reasonable attorney fee under federal law are the same factors that an Oregon court looks at in determining a reasonable fee under ORS 20.075. So it really doesn't matter if we say, here's how federal law works, so Oregon law works the same way. Here's how Oregon law works, so federal law and federal law is no different? Well, there is one slight difference. As the district court noted, there's a lodestar calculation in federal court, whereas in Oregon they dispense with that and they apply the factors in an attempt to reach a reasonable fee. But certainly... No lodestar is needed in Oregon. Pardon me? No lodestar is needed in Oregon. That's correct. There's no lodestar. They're not identical. No, they're not identical. And I apologize. Yes. If by your question you mean, does the court have to explicitly reference all of the factors, for example, in 20.075, the court need not do so. The Oregon Supreme Court has explained that certainly some of the factors that are listed in the statute are not going to be relevant in a particular case. Yes, that's what I intended to say. The court must consider all of the factors. It does not need to make explicit findings about all of the factors. It need only identify the relevant factors. In McCarthy, of course, as we point out, the court also made clear that the objections to the fee petition will highlight what factors are relevant in a particular case. If the court, and this court makes a first step analysis, which is did the court properly understand and apply the law. If he did, if the judge did, then it is an abuse of discretion review. Sure. Well, I think not, because in this case certainly the judge did not himself find all of the factors relevant. The judge identified four of the several factors that it determined to be relevant. And so I don't believe that in this court's abuse of discretion review, it would examine those other factors. Is that responsive? Okay. I have a couple more questions for you. Certainly. The reason I ask my first line of questions is if we're just deciding Oregon law, it's probably an unpublished disposition. It sounds as though Oregon law is different enough so that it really is a state law thing. Well, I think it is a state law question. You know, below, the parties certainly believe that the federal law was just as relevant as the Oregon case in briefing the case. I don't care what the parties thought. I care what you're arguing now. Oh, correct. And below, we took the position that Oregon law applied. However, there's not much Oregon case authority on the particular factor that we're discussing in this case. Let me get to my next question. When I was a trial lawyer, occasionally there would be a defense client, an insurance company. A lot of them, they figured if we owe the money, we want to pay it fast and close and run up a lot of employer fees. But some of them would figure, well, even if we owe the money, let's make the plaintiff work for it. They'd make them work for it. And when I read the judge's findings here, it took to me like destiny to say that. He says, I acknowledge Wal-Mart's argument that the fee award appears disproportionate to the amount covered. So it's not as though the judge ignored the disproportionality. It did not take it into account. It expressly, explicitly took into account the disproportionality. But then the judge says, however, and then brings up several things, things that really struck me, where the judge said Wal-Mart litigated for six-plus years, filed dozens of motions, filed multiple motions the same day, forcing the defendant to defend on them. And Wal-Mart never did disclose how many hours and how much money they put in to defending against the litigation. So they put up to show that the plaintiff was claiming a disproportionate amount. So it looks to me as though what the judge was saying was, well, yeah, it is disproportionate. I'm taking that into consideration. But you guys made your own bed. You decided to make the plaintiff work for it. The plaintiff did and won. So that would mean no abuse of discretion. The judge took everything into account and balanced the relevant considerations. Well, there are a few things I think that are wrong with it. First, I want to make sure, when you're referring, are you referring to his opinion on fees? I can't remember. I read the excerpts to this case and a lot of other cases. Right. Which piece of the record? I can't remember, but you correct me if I've got something wrong. Well, I will say, first off, that, yes, the judge referred to the disproportionality between the fee award and the damages recovered. And he made that point. The record says 140%. Right. And he made that point in his opinion. In our view, though, he has not addressed and never does, in his opinion, addressed the distinction or a comparison between the relief requested and the results obtained. Does that matter? Well, because I think that as ---- A lot of plaintiffs go into court, and, ah, I want a million dollars for this and a million dollars for that. But if they get $200,000, it's really pretty good. Well, because I think it makes a difference because the Supreme Court has explained that it does when it examines the result factor. And the Oregon statute refers not only to the result obtained, but the amount in controversy. I think when you measure success, and that's what we're talking about here, success needs to take into consideration, well, what were they attempting to prove? And, yes, I do think that you also look at the proportionality of the fee award to the ultimate damages. But I think it's important. And we would emphasize that the district court did not consider the distinction between what they were seeking in this case and what they ultimately achieved. They attempted to certify a class of over 15,000 plaintiffs. They pursued the claims of over 400 plaintiffs. They ultimately tried the claims of over 100. And those plaintiffs testified. The judge considered the proportionality between the award and the fee, but not between the award and the demand. That's correct, Your Honor. Can you speak to the other things that I asked you about? Basically the making them work for us. Sure. And that's why I asked where you were looking at that because in his fee opinion, I don't believe that the court goes into that. Now, I believe he may have made some statements. You asked in the last case about statements. Correct. I don't think the judge ever. I believe, Your Honor, that if this is again looking at the number of hours claimed, and we're not challenging the number of hours claimed. We are challenging the failure of the court to then look at that and determine whether that's reasonable in light of the success obtained. If you wanted to turn it around and make a $200,000 victory a loss, that would be easy to do. You just make an offer of judgment. Correct, Your Honor. You say offer of judgment under Rule 68 for $300,000, and you turn them into losers instead of winners. You're right. And with the attorney fee issue out there, though, I think it makes it very difficult for a case such as this to be settled in that fashion. You know, I think that the incentive that results from a $1.9 million fee award. You'd have to make that kind of offer before they spent $1.9 million. Certainly. I will say this, Your Honor, though. Getting back to it, I do want to address the heart of your question, what I'll take is the litigation conducted by Walmart here. I do believe that the judge recited that there was certainly not an unprofessional or any bad faith litigation tactics. And when you look at what actually transpired in this case, yes, there are a lot of docket entries. Part of that was a result of the fact that the court bifurcated this case into two phases. I'm afraid I have not made myself clear. Okay. The idea of English rule as opposed to American rule on attorney fees. Now, this is an English rule situation where Victor gets attorney fees. The idea of English rule is to take away people's incentive to litigate when they're in the wrong by making them pay the other side's attorney fees. If you owe a just debt of $200,000 and you write it through the mail, the English rule is supposed to make it not worth your while. It seems to me that if we accept your argument, then we vitiate the purpose of the English rule that the Oregon legislature has imposed. Well, I think that what the Oregon legislature has imposed is a requirement on the court, again, to look at the results obtained. When you look at this result, again, there were 425 plaintiffs in this case. 350 of them had their claims dismissed. Yes, that involved a lot of time, but ultimately those claims were dismissed. We were successful in litigating against those claims. The plaintiffs recovered on behalf of only 83 plaintiffs, and these plaintiffs were asking for many, many thousands of hours of off-the-clock work, and ultimately the jury virtually repudiated their claims in whole. Of the 83 plaintiffs that recovered any unpaid wages, 34 of them recovered less than $20. Now, the court did talk about success in its opinion, and it's a little bit before the segment that Your Honor was looking at. On pages 135 to 137 of its opinion, it actually recites our argument, it recites the plaintiff's argument, and then it concludes, well, you know, under Oregon law, you can recover when claims are interrelated. Basically, what the court concluded was, you know, there were a lot of plaintiffs that lost here, but at least for the work that was performed up through the first phase of trial, I'm going to allow the plaintiffs to recover all of that work because it ultimately helped the plaintiffs who eventually recovered damages. It assisted them in recovering that. Well, that, though, begs the success question, and that's one thing that the Hensley case addressed very clearly. Certainly under Oregon law, as under federal law, when claims are interrelated, it may be that a non-fee-bearing claim will support a recovery because they arise out of a common nucleus of fact in law. But it's important to recognize that you still need to look at how successful you were on those interrelated claims. The court stopped right there. And that, Your Honors, where I submit he rejected our arguments on success, and we would submit that that is an incorrect understanding of the success analysis. No one disagrees that where you can out a portion, and in most cases that's going to be the situation, you know. You're going to be able to identify some work that went to these plaintiffs who lost or these claims that were unsuccessful. You're going to be able to identify some work that goes to these claims that are successful. But the great majority of time, and certainly in this case, there's going to be an overlap, and you still need to look at the success that was achieved on those overlapping claims. Here, the interrelationship in the court never did that. That's what we submit is the error. Well, the response to that, Your Honor, is that the ultimate significance depends on how many plaintiffs actually were able to establish that Walmart was liable to them. Yes, there was a first phase liability determination, but ultimately the plaintiffs' claims were rejected in large part by the jury here. And so the liability, not entirely, no, but the liability only, under the FLSA, there's no liability unless you have damages in the end. And that's what this case was about, was about the damages. And so the success in achieving liability, that may be worth examining. And all the judge is doing, I would submit at that point, is reciting the plaintiff's argument to that effect. But you need to then consider the rest of the picture, which is, okay, what did that liability ultimately achieve here? And it achieved the – it found the claims of 83 plaintiffs in very small amounts, ultimately, of time, worked off the clock. This is in the entire state of Oregon. I thought what the judge said was consistent with you just wearing them down, letting them drop out. Well, no, because those plaintiffs did not just simply drop out. They were plaintiffs who either were out – their claims were not within – A lot of them didn't prosecute their claims. A lot of them didn't show up for their depositions or otherwise. Correct. I wouldn't say that was wearing them out. That was all they had to do was show up for the deposition. And – Did you happen to read in your preparation Democratic Party v. Reed? I'm sorry. I don't believe I did, Your Honor. It had a kind of analogous issue. And there's a quote in it, litigation has something of the tennis game, something of the war to it. If one side hits the ball and shoots heavy artillery, the other side necessarily spends time hitting the ball or shooting heavy artillery back. And that's what I've been asking you about. Yeah. Well, and I do want to reserve a little of my time. And ultimately, though, you know, I went through the docket just to address that issue myself, Your Honor. Your deposition is not trivial either. No. If you owed me $20, I sure would not take a day out of my life to go to a deposition in order to claim it, even if there's no question you owe it. But they were claiming much more than $20, Your Honor, and that's very important. If you owed me $200, I'd forget about it rather than take a day out. Correct. The trial judge, however, ordered that those depositions occur. These were the result of the procedure. Did you notice them up? The trial judge told you you have to depose every plaintiff? No. It did say that you were entitled to test the credibility of these plaintiffs. And, you know. But usually a defendant doesn't take hundreds of depositions. You're not saying the judge made you take hundreds of depositions just so he would let you. Is that right? Correct. But the court also recognized in letting us that were he not to permit depositions, that the trial could go on forever, and he wanted to have a reasonable length of time in the trial. That was what he said in the May 23, 2002 hearing, in which he addressed how the trial would proceed after the Phase I proceedings. Unless there are further questions, I'll reserve the remainder of my time. Thank you. Thank you. May it please the Court. I'm Bill Rutzick, and I represent the respondents. Let me go back to the first question you asked, or actually the second one you asked. Is Oregon law and federal law the same on this issue? I submit they are on this issue quite different, and let me back that up. Oregon law, and attached to Wal-Mart's first brief in their appendix one and two, they attach ORS 20.075, which is the basic Oregon factors to be considered. There's two parts to it. Part two, in a rough kind of way, part two utilizes the factors generally that are utilized in Hensley, which are derived from disciplinary rule 1.06, the ones that in 1988 litigation you looked at, things like the time and labor required and the activities. Part one, which under 20.075, well, let me do it this way. Subsection two says, the first line says, a court shall consider the factors specified in subsection one of this section in determining the amount of an award, dot, dot, dot. Then second sentence, in addition, the court shall consider the following factors in determining the amount of the award. The following ones are the Kerr factors. It's called different things, the Hensley factors. Part one, which also has eight factors, has no counterpart that I've been able to tell in Hensley, in DR 106, in any of the traditional bases that are utilized under federal law to determine rates. For example, and this was one that he, the judge, specifically discussed, A, this is 1A, the conduct of the parties in the transaction or occurrences that give rise to the litigation, including any, no, 1A. Did I do this? It's at the very top. Oh, that's 2A. I'm now looking at 1A. The conduct of the parties in the transaction or occurrences that give rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith, or illegal. That one goes to the character of the underlying claim, which is not a traditional Kerr factor, a traditional Hensley factor, a traditional DR 106 factor. It goes to whether the entities did something particularly wrong. In this case, the jury found that Walmart, in the liability trial, and it was carried over into the damages trial, that their actions were willful, which is literally. A couple of Walmart cases. Is this the one where there was a special verdict and they said it was willful? Yes. It's in the ER. I'll find it if you want, but I am confident that it says that. The other kinds of factors, if you look at B and E, 1B and E, talk about objective reasonableness of the parties. These are not factors that have any currency that I can find in federal law. So on the premise that the law is the same, I submit it's simply incorrect. It has also been interpreted differently in the case law, and let me speak to that. The Hensley case, Hensley v. Eckerhart, which is one of the major cases under 1988, the attorney's fee litigation, does require, and Judge Kleinfeld, I know, and an author in an opinion called McGinnis that talks about that issue. It talks about, it says an important question that has to be answered. I am reading from, it's 461 U.S., this is Hensley. I'm not sure it's quoted directly in the brief, but this is a quote from Hensley itself. Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? That is the Hensley test. That is not the Oregon test, and let me give you a citation that demonstrates that. A case that we cite in our brief, which is, it's called Willamette Production, which, and I wrote down for the court's benefit. Oh, and this is largely quoted at page 43 of our brief. Much, though not quite all of what I'm talking about is at 43 of our brief, but the actual citation is 706 P. Second at 579. Let me briefly describe what the facts are in this case, which are in some ways quite analogous. The facts in that case, which was a case decided in 1985, which was two years after Hensley, and therefore Hensley, had it been applicable, was easily accessible to the Court of Appeals. The plaintiffs sued for, they had several claims. It touched on a feed lot and some cows, they didn't pay for feeding cows was the gist of it. They sued for several claims totaling $50,000. About a year into the litigation, similar to what Kleinfeld said, the defendants there, which didn't happen here, made an offer of judgment for $6,000-some and attorney's fees to be determined. The plaintiff accepted the offer of judgment, and then they litigated the issue of fees. The fees requested were about, again, roughly $24,000, $22,000 to $24,000, or about three and a half times as much as the judgment. The defendant there argued very similarly to the argument here that that's too much of a fee for a $6,000 case. The court rejected it using language which I think is worth, obviously I think it's worth reading because I'm going to read it. And it starts out by saying, and this touches on some of the questions that you asked at Kleinfeld, this is at 579, as explaining. Let me back up one minute. Under the Hensley test, what one would typically do is say, all right, you asked for $50,000, you settled for $6,000, you didn't achieve the greatest success in the world because if you had done, 100% would have been $50,000, so you got, you know, 10% or 15% of what you asked for. That's not the way the Court of Appeals, the Oregon Court of Appeals adopted it. And they said, if the amount in controversy or the actual recovery were considered as a limitation on attorney's fees, the debtor, by a vigorous or obstreperous defense, could force abandonment of the claim or an attractive settlement simply because it would be uneconomic for the creditor to continue the effort. That, I would submit, is very germane to this issue. But the Court of Appeals did more. This is in the Sukulama case. What they said is in determining the reasonableness of the plaintiff's, in that case, action, we will look not only at the $6,000 that was settled for, but at the $50,000 which was originally pled. And they speak to this. They say, although the settlement figure was approximately $6,500, the amount in controversy was at least $50,000, and plaintiff's efforts were directed in some measure to recovering that amount. They then go on and say that plaintiff's actions there were in expending money going towards the $50,000 were reasonable and thus were compensable. So the Oregon Court of Appeals. It's bad for the plaintiffs in Federal law because they're really going for $50,000 and they only get $6,000. Yes. But it's good for plaintiffs in Oregon law because if they're going for $50,000, it's a $50,000 case. It's a relevant consideration. In other words, that doesn't end the inquiry, but you look not at the fraction comprised of what you asked for versus what you got, but for some purposes you look at what you asked for as part of the basis for the opinion. The other thing that I'll point out. I said it in my brief and I'll mention it again. I looked. I shepherdized Hensley, and the other side didn't say that I missed anything. It's been cited three times in Oregon appellate cases, two on 1983, where you always use Federal law. So, of course, you would. At 1980, attorney's fees in 1980. I didn't go that far, incidentally. I'm, as you probably know from McInnis, kind of uncomfortable with that thinking. If that's Oregon thinking, that's the law. Do we need to go there or can we just use the words earlier in that Oregon decision about obstreperous defense? Doubt and suspenders? I suppose no. I think the judge, and let me speak to the answer is no, you don't have to, though I'm arguing it because it's another, I think, legitimate argument. What the judge said, and this is ER 140, because counsel talked about one of the only factors that the judge mentioned were four, it's the fact that ER 140 and 141 are pages 12 and 13 of the same opinion about what could be possible. What he says is, in determining the amount of fees, I conclude that the following factors are relevant in addition to the other factors set forth in this opinion. This is at the bottom of ER 140, and it carries over. And then he lists four additional factors. But I think rather clearly, and this goes to what you were talking about, Judge Kleinfeld, he acknowledges that he was discussing other factors in other parts of the opinion, including You were talking at ER 141, yes, at ER 141, talking about Wal-Mart presented a formidable defense, had a team of attorneys greater in number than plaintiffs and filed, et cetera. It's, I think, or I would submit, clear that they, not that it was illegal or unethical to present the formidable defense, but it's reality. You deal with, you play with the hand you dealt. The hand that the plaintiffs here were dealt was that Wal-Mart chose to take the deposition of every single plaintiff who was involved. Some of them had big claims. Some of them, and you can tell this from the attachments to both of our briefs, where we have kind of a laundry list of how much was claimed for an individual. Some of them were asking for $40, which at $8 an hour is a total of $320. I mean, some of them were asking, I mean, I remember quite well. One fellow was asking for 15 hours. He was deposed, too. I mean, it is inconceivable from a straight. You suppose somebody is asking for 15 hours at $8 an hour? Yes, yes. The name is Barnes. If you want to look it up in your, there's a list and you can go through it. But there are, and again, there's a wide variation, but there are a number of people who have minimal claims and they were deposed. I note one other thing on ER 141. I also, what the judge is saying, I also note that Wal-Mart did not elect to disclose to the court the amount of hours its attorneys billed in defending the action. And the judge, I believe, drew the same inference I drew, which is it sure wasn't less than ours, or else they would have said so, and maybe it was more, but it sure wasn't less than ours. And so it was, I mean, there were hundreds and hundreds of depositions. The second trial, I mean, which lasted about four weeks, we put on 108 plaintiffs and they put on probably 90 defendants. I mean, well, it lasted about four weeks, but we were running through things at an, I mean, we were doing 10 to 18 witnesses a day. I mean, and that was kind of the thing. It's not, it's a bit of an assembly line. I mean, that was life. Because the judge had said, and again, that's the hand we were dealt with, that you could not use representative evidence to prove damages. You had to. Bank robbery trial work would take half a day to prove it was a federally insured incident. You put on, so we had to put on everybody to say what they did. I mean, those were the rules. And I'm not saying we didn't cross appeal that. That was the decision the judge made, but that's where it was. There was no other way to do it. In fact, had there been, because the defendants say, well, you know, we got rid of 300 of these people before trial, if they had been going to trial, the trial would have, that would have been thousands of more hours both for them and us. I mean, in other words, nobody was milking this. The plaintiffs were not milking this. I mean, we were dealing with what we had. And that's all we could, that's the way to prove the case under the rules that the judge set. So I don't, we didn't do anything wrong. Under Oregon law, it's a perfectly appropriate way to do it. I will, if I may, deal with just a couple other things. The defendants argue that, citing the McCarthy case, which came up, I think, in your Honor's question, that because they mentioned the issue of success versus expectations, that that turns it under Oregon law into a crucial factor. McCarthy doesn't say that. What McCarthy says in a case that came right after McCarthy called the Dockins case, both of which are cited in the briefs, say that the defendants in this context can, by raising an issue, they can structure the discussion in that if they raise an issue, that means that it's a relevant issue. But it doesn't create, it doesn't mean it's a, it doesn't turn it into an issue that under Hensley is determinative or is crucial because a defendant can't, by simply raising an issue, turn that into the only issue. Oregon law has 16 factors, the 075 factors, and they've interpreted it. So, in fact, the judge repeatedly, and he talks about success and lack thereof at pages ER 136 and 137, which he talks about. He talks about it at ER 140, that he quoted. He also talks about it at ER 142 and 143, where this is all from the written opinion. This is pages 14 and 15, the written opinion. Wal-Mart objects to the enhancement of plaintiff's fees and instead argues they should be adjusted downward, which I would submit is what we're talking about here. It says that I will not adjust the fees upward for several reasons. First, while plaintiffs were successful during the first phase of the trial and in resisting a determined defense by Wal-Mart, the amount of damages was small. Although I do not use this as a basis to reduce plaintiff's counsel's fees by a directly proportionate amount, it is a factor I have considered in deciding not to enhance the fees. Under McCarthy, that is a perfectly satisfactory ‑‑ because McCarthy, the gist of what McCarthy says is that the trial judge doesn't have to write a tome on the subject. He has to indicate that he or she has considered it so we can review it. He has ‑‑ Judge King there and throughout it makes it clear, I submit, that he's considered it. He rejected their argument. Let me mention one other ‑‑ I'm sorry. Let me mention one other Oregon case that I had talked about in the brief that touches on kind of Oregon policy. This is a state XRL Nielsen. It's an Oregon Supreme Court case cited, among other places, at 432P2 at page 515. And this was a wage collection action. And it says, talking about it, the policy of the statute is to aid an employee in the prompt collection of compensation due him and to discourage an employer from using a position of economic superiority as a lever to dissuade an employee from promptly collecting his agreed compensation. And I'm going to skip two sentences, but you will have it there. The smaller the amount of the unpaid compensation, the greater is the need for assistance in effecting collection. The policy of the statute is analogous to the policy underlying ORS 20.080, which allows the collection of attorney's fees in certain small tort claims. Where are you quoting from again? I'm quoting from state XRL Nielsen versus I think it's the Oregon ‑‑ it's an Oregon ‑‑ they deal with cars. I forget the thing. But that quote can be found at 432P2 at 515. And that is Oregon's policy. And we all agree it's Oregon law that applies. And they think this is a good idea to effectuate relatively small claims. That's what we did. There's no suggestion. Significantly, the defendants don't dispute that we actually spent the hours or that our rates were out of line. And the judge went through all these various factors and considered it and found that ‑‑ I mean, he didn't give an enhancement and he slightly reduced the stuff. That was very much within his discretion. It's in no way an abusive discretion. And under Oregon law, I submit he did it exactly as he should have. Thank you, Your Honor. Thank you, Counselor. Eames versus Walmart. Oh, I'm sorry. You said something else. Just one minute further, Your Honor. I did just want to emphasize that what the court is focused on is one of the factors, the time and labor required in the proceeding. There's another factor. And we submit that the district court never considered it, which is the success in light of what was involved. The 108 plaintiffs ‑‑ I'm not putting aside the 350 plaintiffs who had their claims dismissed. The 108 plaintiffs who tried their claims said they had worked off the clock more than 38,000 hours. And the jury found that they had worked off the clock 850 hours. That, we would submit, is an issue of success that needs to be looked at. It needs to be looked at in addition to the amount of time that was involved, which is what the court is talking about in the section that you focused on. Thank you very much.
judges: D.W. Nelson, Kleinfeld, Bybee